E. H. NEWMAN, Respondent, v. THE WESTERN UNION
TELEGRAPH COMPANY, Appellant.

St. Louis Court of Appeals, May 23, 1893.

1. **Damages for Non-Delivery of Telegram**: MENTAL SUFFER-
ING. The sender of a telegram cannot recover damages for mental
suffering caused by the non-delivery of it, when these are the only
damages suffered.

2. **Evidence**: COMPETENCY OF ESTIMATE OF DAMAGES FOR MENTAL SUF-
FERING. The opinion of a witness as to the money value of anxiety
and worry on his part is not competent evidence.

*Appeal from the Greene Circuit Court.*—HON. H. E.
HOWELL, Special Judge.

REVERSED.

*John O'Day* and *E. C. O'Day*, for appellant.

*W. G. Robertson*, for respondent.

BOND, J.—This action was brought for mental suf-
fering caused by the non-delivery of a telegram sent
by the respondent from Marshfield, Missouri, to the city
of St. Louis.

The respondent states that his mother and sister
and her family lived in St. Louis, which was visited by
a cyclone on or about January 12, 1890; that his con-
cern about their personal safety induced the sending of
the message, whose non-delivery caused him mental
anxiety and anguish to the amount of $2,000.

The defendant's answer sets up, *first*, a general
denial; *second*, that, under the law and the terms of the
contract whereunder the message in question was
received, no duty was cast upon defendant to deliver

said message, because it was addressed to a point outside of the free delivery limits in the city of St. Louis, and that the respondent failed and refused to pay the charge for delivery beyond said limits fixed in said contract; *third*, that no liability accrued, because no written claim was made within sixty days after the transmission of said message; *fourth*, that no liability attached, because the respondent failed and refused to cause said message to be repeated, as provided for in said contract.

The evidence tended to prove that the respondent, a salesman at Marshfield, Missouri, noticed in an evening paper of January 13, 1890, that a cyclone had passed over a certain portion of the city of St. Louis, where his mother and sister resided; that he thereupon, about 5:45 P. M., telegraphed his sister as follows:

"JANUARY 13, 1890.

"*Mrs. M. M. Newman, 1657 South Jefferson Avenue,
St. Louis, Missouri:*

"Are you all safe and well; answer at once.

"E. H. NEWMAN."

This message was contained on a form provided by appellant, embodying the conditions as to liability set out in its answer herein and reciting that its terms were agreed to by the sender.

The residence address of the foregoing telegram was outside of the free delivery limits as then established. The telegram was never delivered. The respondent called at the depot at Marshfield several times during the evening, and, receiving no reply, wrote the next day to his sister and received a telegram in reply that all were well, and that his message had not been received. The time between the sending of respondent's message and the reception of his sister's telegram was about thirty-six hours.

The following questions were put to the respond-
ent, who made answers as follows (to which evidence
appellant duly preserved its objections), to-wit:

"*Q.* During the thirty-six hours, state to jury what
your condition was by reason of the telegram not being
delivered, and how much in your opinion you were
damaged in dollars and cents?  *A.* Well, my physical
condition was good, but then mentally I was worried;
I went down to the depot probably a dozen times the
next day inquiring; thought probably they had received
the message and answered, and they had probably
delayed in bringing it up, and I went down and
inquired myself, and I wasn't relieved until I heard
from them that they were all well.

"*Q.* Can you place any value upon the damages?
If you have an opinion as to the amount, go ahead and
state it.  *A.* I was in my opinion damaged in the sum
of $2,000."

There was a verdict and judgment for respondent
for $300, from which an appeal was taken to this court.

The errors assigned are:  *First*, that the petition
states no cause of action; *second*, that the court erred
in allowing respondent to give his opinion in evidence
as to the amount of damages suffered by him during
the delay of thirty-six hours before he heard from his
sister; *third*, errors in the giving and refusing of
instructions, and in overruling motions for new trial
and in arrest of judgment.

The petition states the negligent failure of appel-
lant to transmit and deliver the said message; it then
adds, to-wit:  "Whereby plaintiff says he was greatly
worried and harrassed, and suffered great mental
anguish, and by reason of said suffering and mental
anxiety and anguish he was damaged in the sum of
$2,000."  It is apparent, therefore, that the only basis
of recovery relied upon in this case is the mental

anxiety felt by the respondent during the interval between sending his message of inquiry and receiving the telegram of his sister relieving his fears. The question, therefore, on the first assignment of error is purely one of law, to-wit: Can there be a recovery in an action of negligence for non-delivery of a telegram, causing mental suffering but no physical injury or pecuniary loss to the sender?

This question has not heretofore been directly decided in the appellate courts of this state. The first decision in other states was held in *So Relle v. Tel. Co.*, 55 Tex. 308. In that case the doctrine was broadly stated that mental suffering discerpted from bodily pain or pecuniary injury was a proper element of recovery in an action for negligent non-delivery of a telegram. The conclusion expressed in that case was unsupported, except by a quotation of opinion expressed by Shearman & Redfield in their book on negligence. (*Ibid.*, sec. 756.)

In *Railroad v. Levy*, 59 Tex. 563, the *So Relle* case, *supra*, was expressly overruled, and the rule announced that the mental suffering of the addressee of an undelivered telegram was no ground of recovery, and that no authority in this country held that "the person *to whom* the message is sent may maintain an action for the negligence of a telegraph company in transmitting, without averment and proof of some actual pecuniary injury sustained thereby."

In the case of *Stuart v. Tel. Co.*, 66 Tex. 580–586, the court, speaking of its previous decision (*So Relle case, supra*), said: "That authority was overruled in the elder Levy case only in so far as it held that such damage alone would sustain an action. The two cases conflict in but this one point. *We find no case, except So Relle, which holds that a party may come into court solely to redress an injury to his feelings.* Such injury

is not to the name, person or property; but if to either of these an actionable injury is done, the complaining party may then recover as actual damages compensation for the proximate results of the wrongful act. When injury to the feelings is such result, it forms an element of the actual damage." It was also said, as to the principle of liability for mental suffering, "that it is caused by and contemplated in the doing of the wrongful act."

In *McAllen v. Tel. Co.*, 70 Tex. 243-246, it was held that the sender of an undelivered telegram could not recover because ·he failed to make known the sickness of the addressee, wherefore any mental suffering caused by non-delivery could not have been "contemplated by defendant's agent, nor was it the necessary or usual consequence of a failure to perform such a contract." In that case there was one feature strikingly similar to the one at bar, *i. e.*, the *groundlessness* of the mental suffering complained of. As to this the court said: "In this case it seems that the plaintiff's mental anguish was not the result of any real or adequate cause. * * * If grief or sorrows produced by things unreal, mere figments of the brain, are held to give a cause of action for a breach of contract or a tort, an individual of a somber, glowing imagination would often be entitled to large damages on account of mental suffering, while others of a buoyant fancy for the same breach of duty would not be entitled to anything; and damages, instead of being measured by the rules of law as applied to the real facts, would largely depend upon the fertility of the imagination of the suitor." ·

In *Rowell v. Tel. Co.*, 75 Tex. 26, the facts were that a message was sent asking the plaintiff's wife to come to her mother who was dangerously sick, whereupon the plaintiff sent the following telegram:

"*To W. C. Scott, Athens, Texas.*

"How is mother? If no better, Josie comes to-night. Answer—my expense.

"[Signed]                                J. H. ROWELL."

The answer sent to the above message was *not delivered,* whereupon plaintiff sued, demurrer being sustained. The court held on appeal as follows to-wit: "We are of the opinion that the demurrer was properly sustained. The damage here complained of was the mere continued anxiety caused by the failure promptly to deliver the message. Some kind of unpleasant emotion in the mind of the injured party is probably the result of a breach of contract in most cases, but the cases are rare in which such emotion can be held an element of the damages resulting from the breach. For injury to the feelings in such cases the courts cannot give redress. Any other rule would result in intolerable litigation."

In the late case of *Tel. Co. v. Beringer,* 84 Tex. 38, the suit was brought by the addressee for failure to deliver a telegram informing him of the death of his father, and directing him to "come up at once." The court held that the action was properly brought, and added: "It has been repeatedly decided by this court that compensation for mental anguish may be recovered in such cases."

It is obvious from the initial case until the one last quoted that the trend of decisions in the courts of Texas has been marked by vacillating uncertainty, and subjected to varying qualifications in its assertion of the doctrine and conditions of liability in actions for mental suffering. As a whole, the Texas cases seem to demonstrate their embarrassed efforts to escape the consequences of the doctrine announced in the earliest case. (*So Relle v. Tel. Co., supra.*) They do not, therefore, contribute on this topic anything of value to legal science, and should not be accorded any persuasive

force in the solution of this question by the courts of other states. Their last ruling, however, has been measurably adopted in certain other states.

In *Chapman v. Tel. Co.* (Kentucky Court of Appeals), 30 Am. & Eng. Corp. Cases, 626, the court, upon the authority of Shearman & Redfield, *supra*, held: "Whether the injury be to the feelings or pecuniary, the act of the violator of a right secured by contract has caused it. The source is the same, and the violator should answer for all the proximate damages."

In *Wadsworth v. Tel. Co.*, 86 Tenn. 695, the opinion of the majority of the court follows the rule laid down in some of the Texas cases, to the effect that the addressee of the telegram has a right of action for injury to his feelings caused by its non-delivery. That case, aside from presenting nothing new in support of its conclusions, is so thoroughly confuted by the learned and logical argument contained in the dissenting opinions of Judges Lurton and Fowlkes, that it may be laid out of view in the further consideration of this subject.

In *Rese v. Tel. Co.*, 123 Ind. 294, the decision is rested upon the Tennessee case as authority for holding that the sending of a telegram by a husband, conveying notice of sickness of his wife to his brother-in-law, would entitle the husband to recover for his *mental suffering caused by the failure of his brother-in-law to come*, because of non-delivery of the telegram.

In *Young v. Tel. Co.*, 107 N. C. 370, it was held that the addressee of a telegram might sue for delay in its delivery, and in addition to nominal damages might recover for mental suffering caused by the delay, citing the Indiana case and the Texas cases.

In *Tel. Co. v. Henderson* (Alabama, 30 Am. & Eng. Corp. Cases, 615), the conflict in the authorities was

noted and the case at hand distinguished, the court saying: "The right of the plaintiff to sue for the breach of the contract to deliver, if within the free delivery distance, takes the case out of the rule, if a sound one, that mental distress will not maintain the suit when there is no other element of recoverable damage."

Aside from the suggestion contained in Shearman & Redfield, *supra*, there was no original authority adduced as the foundation of the views expressed in the foregoing cases, and, while each cites those which were prior, in the last analysis the only tangible support of the whole superstructure of opinions is the paragraph quoted; and singularly enough that paragraph (section 756, [4 Ed.] ) *now cites* as its only support one of the Texas cases which was founded upon it.

The theory upon which the foregoing cases sustain the right to bring an independent action solely for mental suffering does not commend itself to us as sound in principle, nor are we satisfied with the authority quoted in its favor. The question is *res integra* with us, and in solving it we are controlled by two considerations: *First*, its consistence with established principles of legal procedure; *second*, its utility. We are aware of no valid argument in favor of permitting recoveries purely for mental suffering for non-delivered telegrams, which would no tapply with equal force to an action against common carriers for mental suffering caused by the non-delivery of a passenger at his destination. Yet it is well settled that for mental sufferings inflicted on a lady, who has been carried beyond her station but not physically injured there can be no recovery. *Trigg v. Railroad*, 74 Mo. 147, 153. To the same effect is *Wilcox v. Railroad*, 52 Fed. Rep. 264.

If a suit for *anxiety* for the welfare of relatives who were not injured can be sustained in an action against a telegraph company for negligently failing to deliver a message of inquiry, why could not a passenger hemmed in a wreck train at one point, seeing the same afire at another point, but who was extricated uninjured before the flames reached the place where he was pinioned, recover for the fright, horror and mental distress experienced? That such incidents take place in modern traveling is undoubted; yet no precedent is preserved of the institution of such a suit, and no authority can be shown for its maintenance. Wood's Mayne on Damages, p. 75, and notes; *Ewing v. Railroad*, 147 Pa. St. 40; *Commissioners v. Coultas*, 13 Appeal Cases, 222; *Fox v. Borkey*, 126 Pa. St. 164; *Purcell v. Railroad*, 48 Minn. 134; *Lehman v. Railroad*, 47 Hun, 355.

The law is fixed and elementary, that civil methods of redress for torts do not include pain of mind, except the same be derived from pain of body or pecuniary injury. A wrongful act not affecting the person or the purse is *not tortious* in the eye of the law. This distinction will be found to prevail in all the strained analogies drawn from recoveries in a libel, slander, seduction, etc., in support of the contrary cases. In suits for defamation of character the theory of the law is, that plaintiff has a property right in his reputation which should be vindicated when damaged, as any other thing of value would be protected by law if impaired. So in the cases of seduction or of injuries to minor children (outside of statutory provisions) the prerequisite to recovery is the proof of loss of services. It is evident, therefore, that all such actions have for their foundation an infracted property right, and are radically different from actions for injury to feelings, unconnected with any injury to a property right. In

the latter case the condition for legal redress does not subsist on account of the absence of its essential basis. *Wyman v. Leavitt*, 71 Me. 227.

It is the universal law that, in actions for bodily injuries, the physical pain and mental suffering caused by such injuries are proper elements of damages to be recovered. *Brown v. Railroad*, 99 Mo. 310, 319. When mental suffering is distinct and separate from the bodily injuries, it has been held that it cannot be considered as an element of damages. *Johnson v. Wells, Fargo & Co.*, 6 Nev. 224; *Triggs v. Railroad, supra; Railroad v. Stables*, 62 Ill. 313; *Jock v. Dankward*, 85 Ill. 331; *Keyes v. Railroad*, 36 Minn. 290; *City of Salina v. Trosper*, 27 Kan. 544; *Dorrah v. Railroad*, 65 Miss. 14.

It is the law of this state that, under a statute authorizing a parent to recover damages not exceeding $5,000 for the death of his minor child, although there might be a recovery for actual and also punitive damages, if the circumstances warranted the latter, there could not be a recovery therein for the mental suffering of the parent. *Parsons v. Railroad*, 94 Mo. 286, 300; Cooley on Torts, secs. 271, 273; *Schaub v. Railroad*, 106 Mo. 74.

That there can be no substantial recovery by legal procedure for mental anxiety or suffering alone, occasioned by failure to deliver a telegram, is maintained with much ability and bearing by the supreme court of Georgia in an opinion reviewing all the authorities and supporting its conclusions with irrefragable legal reasoning. *Chapman v. Tel. Co.*, 39 Am. & Eng. Corp. Cases, p. 567, citing *West v. Tel. Co.*, 39 Kan. 93; *Russell v. Tel. Co.*, 3 Dak. 315; *Western Union Tel. Co. v. Rogers*, 68 Miss. 748; *Chase v. Tel. Co.*, 44 Fed. Rep. 554; *Crawson v. Tel. Co.*, 47 Fed. Rep. 544.

In the principal case *Chapman v. Tel. Co.*, 39 Am. & Eng. Corp. Cases, *supra*, the question was whether a person to whom a telegraphic message announcing the dying condition of a brother was sent, but by gross negligence of the company was not delivered with due promptness, so that he was unable to reach the brother's bedside before death transpired, can recover substantial damages for the mental suffering caused by the company's failure of duty. The court after an exhaustive review of the authorities decided this question in the negative, saying: "The body, reputation and property of the citizen are not to be invaded without responsibility in damages to the sufferer. But outside of these protected spheres the law does not yet attempt to guard the peace of mind, the feelings or the happiness of everyone by giving recovery of damages for mental anguish produced by mere negligence.    *    *    * The civil law is a practicable business system dealing with what is tangible, and does not undertake to redress psychological injuries "

In the well considered case of *Tel. Co. v. Rogers*, 68 Miss. *supra*, where the action was for delay in delivery of a telegram stating the death and time of burial of plaintiff's brother, whereby he was prevented from attending the obsequies, the court reviewed the question from the standpoint of reason and authority and rejected it as unsustained by either, saying: "We are not disposed to depart from what we consider the old and settled principles of law, nor to follow the few courts in which the new rule has been announced."

"The difficulty of supplying any measure of damages for bodily injury is universally recognized and commented on by the courts, but in that class of cases demands for simulated or imaginary injuries are far less likely to be made than will be those in suits for mental pain alone. No one but the plaintiff can

know whether he really suffers any mental disturbance and its extent and severity must depend upon his own mental peculiarity. In the nature of things money can neither palliate nor compensate the injury he has sustained. 'Mental pain and anxiety the law cannot value, anddoes not pretend to redress when the unlawful act complained of, causes that alone.' *Lynch v. Knight,* 9 H. L. 577.''

The two last cited cases have reached this conclusion after subjecting all the prior decisions pro and con to a rigid analysis. Their judgment is in some measure that of the law after full hearing and broad presentation of the issues. In our judgment it is eminently clear and sound, and brings the question within the logical limits of legal procedure. Any other view of the question would involve methods of redress outside the pale of the law. We therefore hold that a recovery solely for mental suffering not caused by injury to the person, property or reputation, is not within the scope of legal procedure, as defined and limited by right reason.

Nor do we think that relief for mental suffering independently of other actionable grounds is useful or contemplated by legal polity. The immediate result of the admission of such a doctrine would be a rush of suits for fanciful and speculative damages; this has been practically illustrated in the growth of this class of litigation in Texas. It is not wise or true legal polity to countenance a class of litigation resting on no substantial basis cognizable at law, and wholly indeterminate in the measure of damages or liability. On the other hand there is no question but that for breaches of tract or negligence in transmitting or delivering messages, telegraph companies can be held liable according to established legal methods for the proximate damages caused by their default. Revised Statutes, 1889, sec.

2729; *Markel v. Tel. Co.*, 19 Mo. App. 80; *Tel. Co. v. Hall*, 124 U. S. 444. Nor do we exclude from view the fact that telegraphy is one of the greatest agencies of civilized life and business, and should be held in full performance of its duties to the public who contribute to its employment. This reflection does not, however, justify us in breaking down the barriers of redress fixed by law. It does address itself to the legislature, and that body with commendable wisdom has enacted a limit of recovery by convention for the breach of the duty and obligation of telegraph or telephone companies. Revised Statutes, 1889, section 2725.

It is said, *Burnett v. Tel. Co.*, 39 Mo. App. 599, *arguendo* of the policy of this act: "Yet it is apprehended that the well known general rule, which would deprive the sender of a telegraphic message from the recovery of damages beyond the amount paid for transmitting the dispatch where the damages would be given as a mere *solatium* for wounded pride, affection or other so called mental feelings, *may have been one of the reasons which induced the legislature on grounds of public policy to enact a statute giving damages in such cases in the form of a penalty.*" This is also in accordance with the suggestion in the opinion. *Chapman v. Tel. Co.* 39 Am. & Eng. Corp. Cases, *supra*. That such legislation is constitutional and does not impinge on interstate commerce, is settled in this state. *Connell v. Tel. Co.* 108 Mo. 459. In the construction of section 2,725 of the Revised Statutes, 1889, it was decided that the operation of this statute was not obnoxious to the rule announced in *Tel. Co. v. Pendleton*, 122 U. S. 347, nor any case before or since that decision. 108 Mo. page 465. To the same effect is *Pembina Mining Co. v. Pennsylvania*, 125 U. S. 181; and see Acts of Legislature of Missouri, 1891, p. 75, section 1.

The second assignment of error as to the admission of evidence of the opinion of plaintiff as to the money value of his mental suffering was well taken, not only on the grounds set forth in this opinion but also according to the general rules as to the testimony of that sort, which is: "A witness not testifying as an expert, testifying merely as to matters with which the jury may well be supposed to be as conversant as himself and as capable of drawing a correct conclusion, is not allowed to give an opinion." *Hurt v. Railroad*, 94 Mo. 260; *Smith v. Young*, 26 Mo. App. 575.

Our conclusion is that the plaintiff in this case is not entitled to recover the damages claimed in his action for the failure of the appellant to promptly deliver the message sent. The judgment of the lower court will, therefore, be reversed. Judge BIGGS concurs. Judge ROMBAUER is absent.

Since writing this opinion we have received a copy of a decision of the supreme court (*Connell v. Tel. Co.*, unreported\*), holding same views herein expressed.

| 54 | 447 |
|----|-----|
| 74 | 217 |
| 54 | 447 |
| 80 | 220 |

\* This opinion has been published in 22 S. W. Rep. 345.